UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENEDINA MARIE PONCE,<br><br>    Plaintiff<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 2:14-cv-7834-GJS<br><br>**MEMORANDUM AND ORDER REMANDING FOR FURTHER PROCEEDINGS** |

## INTRODUCTION

In this social security disability benefits case, the administrative law judge ("ALJ") conducted a hearing, consulted a medical and vocational expert, received medical records from multiple facilities, and at Ponce's request, held the record open so that she could introduce additional documentary evidence—an opportunity that Ponce availed herself of. Now, dissatisfied with the ALJ's determination, she claims that there were additional medical records to obtain, and additional consultations to be made. The alleged medical records were never presented to the Appeals Council, and in fact, the Commissioner argues they may not even exist. On this record, the Court cannot determine whether they exist or not, and if they do, what they might say. Though the Court strongly suspects that further proceedings

are an exercise in futility, it reluctantly remands this case to determine if additional records exist, and if so, whether they are probative to the ALJ's finding that Ponce was "not disabled."

## PROCEDURAL HISTORY

Ponce applied for disability benefits on May 31, 2011, alleging that she had been disabled as of May 14, 2011, based on her rheumatoid arthritis, interstitial lung disease with pulmonary fibrosis, polymyositis, fibromyalgia, and depression. [Admin. Rec. ("AR") 165, 255.] The application was denied initially on October 10, 2011 and upon reconsideration on February 2, 2012. [AR 76, 83.] Subsequently, ALJ Sally Reason held a hearing on March 25, 2013. [AR 22.] The ALJ issued a decision finding Ponce not to qualify for disability benefits on April 30, 2013. [AR 6-17.] Ponce sought review from the Appeals Council on May 7, 2013. Notably, Ponce did not submit additional documentation to expand the record for the Appeals Council's determination. On September 11, 2014, the Appeals Council denied review, and the ALJ's decision became the Commissioner's final determination. [AR 1-3.] Ponce timely filed this action for judicial review under 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

The Court summarizes only the facts related to the sole issue pressed here: whether the ALJ satisfied her duty to develop the record adequately.

### I.     Ponce's Hearing

On March 25, 2013, the ALJ held a hearing to determine Ponce's disability benefits. [AR 24.] Present at the hearing were the ALJ, the claimant, the claimant's counsel, vocational expert Heidi Paul, and medical expert Gerald Weingarten (participating telephonically). [*Id.*] At the very beginning of the hearing, Ponce's counsel provided to the ALJ 22 pages that "seem[ed] to be progress notes from 2011

and 2012." [*Id.*] Ponce's counsel explained that the records were "from De Jesus Medical Clinic, which is where Ms. Ponce [was] going for primary care," "from UCLA Healthcare indicating that Ms. Ponce had a lung biopsy back in 2007," and "an MRI for bilateral hips performed in March of 2012 from Renaissance Imaging Center." [AR 23-24.] The ALJ noted that they seemed "sporadic," and that because the medical expert was appearing telephonically, counsel would have to explain relevant parts. [*Id.*]

    The ALJ candidly acknowledged that Ponce's medical history seemed less than complete:

> Well, as I indicated, part of my concern in reviewing the records was [that] I didn't see any records for two years. And now you've brought in some records that help supplement the record a bit. But I think they're sparse, even as to last year. In any event, let's see what we can do with this record.

[AR 27-28.] During the questioning of the medical expert, the gaps in the record became more apparent. Dr. Weingarten testified that he was able to identify Ponce's impairments, but that he "didn't know if [he] ha[d] sufficient information as far as the severity of her condition." [AR 29.] The ALJ agreed, noting that she "had a question about that, too," and that the newly furnished records "seem to be more sporadic follow-ups." [*Id.*] Without the degree of severity, the medical expert was not "able to make a determination as to whether [Ponce] meets or is equivalent to a medical listing" because he did not "have enough information," nor could he "tell if she has work-related limitations" other than what was contained in the "internal medicine examination[.]" [AR 29-30.] Ultimately, Dr. Weingarten recommended that she be sent "for another consultative evaluation" because "[t]here should be more detailed medical records." [AR 30.] Indeed, the ALJ remarked that a supplemental hearing might be appropriate. [*Id.*]

3

During Ponce's testimony, the ALJ again noted "the lack of many records in the last couple of years for" Ponce. [AR 37.] When asked to "comment on why it seems like" Ponce "had such little treatment or why [the records] seem to be so sporadic," Ponce explained that the records should exist because she went to Universal Pain Management, a pain clinic, every month, and that she sees Dr. De Jesus every three to four months for lab work. [*Id.*] Again, the ALJ indicated the limited nature of records, explaining that she had some "records from Urgent Care and De Jesus Medical Clinic." [*Id.*] Ponce's counsel explained that they were still waiting on records from Universal Pain Management. [*Id.*] The ALJ held the record open for two weeks to permit Ponce to submit additional records. [AR 38, 50-51.]

Within the open record period, Ponce submitted records from Universal Pain Management. [AR 419-444.] She did not receive an additional consultative evaluation, nor did the ALJ receive supplemental records from her treating physician at De Jesus Medical Clinic.

**II. The ALJ's Decision**

The ALJ's unfavorable opinion is replete with references that the documentation before her was inadequate. For example, in discussing Ponce's "numerous diagnoses of fibromyalgia," the ALJ concluded that "these diagnoses appear to be tenuously supported by the claimant's self-reports of pain, as no diagnostic tests, such as a tender points test, have been performed[.]" [AR 12.] But assuming that fibromyalgia was established, the ALJ found "insufficient support" "that it would cause limitations above and beyond claimant's other impairments." [*Id.*]

In concluding that Ponce did not suffer from a listed impairment, the ALJ relied on Dr. Weingarten's conclusion that "the record did not include enough evidence to determine whether the claimant's impairments meet or equal a listing." [*Id.*] The ALJ supported Weingarten's opinion with the State Agency medical consultant's conclusion that there was no listing impairment. [*Id.*]

At Step 4—when the ALJ determines a claimant's RFC—the ALJ correctly explained that:

> whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record.

[AR 13.] Applying that rule, the ALJ found Ponce's statements to be "not entirely credible" even though her "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [*Id.*] Among other things, the ALJ expressly noted "there is little objective medical evidence showing any significant abnormalities in her hips or low back," "[t]he treatment records do not adequately support the degree of fatigue the claimant alleges," and that "although the claimant is noted to have tenderness and a slight loss of range of motion in her physical examinations, no positive straight leg raise tests are noted in the record." [AR 14.]

## GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074. Whether an ALJ satisfies her duty to develop the record is an issue of legal error. *See Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014) ("It was legal error for the ALJ not to

ensure that the record included a complete set of IQ test results that both the ALJ and the reviewing experts could consider.").

## DISCUSSION

It is unquestionable that Ponce cannot "be considered to be under a disability unless [s]he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5); *see* 20 C.F.R. §§ 404.1512(a)&(c). Put another way, she carried the "duty to prove that she was disabled." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). Yet, the Commissioner shares the burden of developing such evidence. "In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). Particularly relevant here, that duty "extends to the represented as well as to the unrepresented claimant." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Nonetheless, the ALJ is not a roving investigator; her duty to "to develop the record further is triggered *only* when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes,* 276 F.3d at 459-60 (emphasis added); *see Webb*, 433 F.3d at 683 (explaining that duty to enlarge the record only arises if the evidence is ambiguous, the ALJ finds that the record is inadequate, or the ALJ relies on an expert's conclusion that the evidence is ambiguous). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150 (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir.1998)).

6

1  Although the ALJ permitted supplementation of the record (and did indeed
2  receive additional documents), the ALJ's opinion reflects that the supplementation
3  did not sufficiently develop the record to quell the concerns that she and the medical
4  expert expressed during the hearing. In sum, the ALJ still was left with an
5  ambiguously incomplete medical history. The ALJ did not receive an update to the
6  records from Dr. De Jesus, Ponce's alleged treating physician, even though Ponce
7  said that she visited Dr. De Jesus every three to four months and the last
8  documented visit was April 9, 2012. [AR 405.][1] And the supplemented Universal
9  Pain Management clinic records do not fill the gap. They reflect that Ponce's last
10 visit to the pain management clinic occurred on July 3, 2012. [AR 420.] This was
11 more than six months before the hearing—a significant fact because Ponce testified
12 that she went to the clinic once a month. [*See* AR 37.]

It is not clear whether more recent records should and do exist. The ultimate problem is that the paucity of records could indicate **either** (1) that Ponce did not actually receive treatment as frequently as expected, or (2) that additional medical records exist, not currently in the administrative record, which further describe Ponce's symptoms. Without an attempt to subpoena those records, the ALJ (and thus this Court) cannot know whether they exist, and if so, what they said about Ponce's conditions. Just like in *Tonapetyan*, the medical expert here believed "[t]here should be more detailed medical records." [AR 30]; *see* 242 F.3d at 1150.

The Court might be able to affirm the ALJ's decision, regardless of the lack of records, if it could determine that those records ultimately would not affect a finding of disability. *See McLeod v. Astrue,* 640 F.3d 881, 887 (9th Cir. 2010) (holding that harmless error analysis applies in social security administrative review); *see also* 28

---

[1] The Court notes that the records *do* reflect that Ponce did not show up for an appointment on March 21, 2013. [AR 393.]

7

1  U.S.C. § 2111 (applying harmless error rule to any civil case).  But here, the Court
2  cannot make a determination either way.  The ALJ's opinion contains numerous
3  assertions that updated records from Ponce's treatment physician might contradict.
4  For example, Dr. Weingarten could not opine on whether Ponce's rheumatoid
5  arthritis and pulmonary fibrosis constituted a listed impairment or its equivalent—
6  *i.e.*, an affliction so severe that Ponce would be automatically entitled to disability
7  benefits.  [AR 29-30]; *see Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.2007).   And
8  even putting aside the Step Three analysis (the most concerning of the evidentiary
9  deficiencies), more recent records might have undermined at least the following
10 findings: (1) that Ponce did not suffer the degree of fatigue that she alleged, (2) that
11 the medical opinions were "uncontradicted by any other medical source statement
12 indicating a greater degree of physical limitation," (3) that no positive straight leg
13 tests support Ponce's claims, and (4) that "little objective medical evidence"
14 reflected "significant abnormalities in [Ponce's] hips or low back."  [AR 14.]
15 Because the record is simply too undeveloped, the Court cannot determine whether
16 the failure to develop the record was ultimately prejudicial.  *See, e.g.*, *Garcia*, 768
17 F.3d at 929 ("While it is not certain from the record before us that Garcia would
18 have been determined to be disabled if the record had been properly developed, it is
19 also not 'clear from the record that 'the ALJ's error was inconsequential to the
20 ultimate nondisability determination.'"); *McLeod*, 640 F.3d at 888 ("[D]espite the
21 burden to show prejudice being on the party claiming error by the administrative
22 agency, the reviewing court can determine from the 'circumstances of the case' that
23 further administrative review is needed to determine whether there was prejudice
24 from the error.") (citing *Hoa Hong Van v. Barnhart*, 483 F.3d 600, 605 (9th

Cir.2007)).² Therefore, remand is appropriate. *Garcia*, 768 F.3d at 929; *McLeod*, 640 F.3d at 888.

## CONCLUSION

The Court ends on a note of frustration: If additional medical documents indeed exist, Ponce's counsel could have supplemented the record before the Commission to avoid the necessity of this Court's review of the sole issue presented. The ALJ held the record open for that very purpose. Based on the record before the ALJ, she wrote a thoughtful analysis of the documentary and testimonial evidence presented. In any other circumstance, it would be reasonable to assume from Ponce's counsel's failure to submit additional De Jesus medical clinic records that no such records exist.³ Even now, this Court has no idea whether these alleged records exist and what they may contain. But because the ALJ maintains a special duty to develop the

---

² The Commissioner cites *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) for the proposition that the Court "may not reverse an ALJ's decision on account of an error that is harmless." [Dkt. 22 at 4.] The Court does not disagree, but where the Court cannot ascertain whether the error was prejudicial or not, remand is the appropriate remedy.

³ The Court notes that this decision has bad policy ramifications. It allows claimant's counsel to raise the specter of additional evidence, take no steps to actually introduce such evidence, and then rely on the record as developed for a decision by an ALJ after hearing. If the decision comes out favorably, the claimant has won. If the decision is unfavorable, claimant's counsel can simply seek a do-over because the ALJ did not develop the record adequately. This all said, there is no evidence that Ponce's counsel at any time has acted in bad faith.

The Court notes that its decision here assumes that Ponce and her counsel do not believe that no records exist (*i.e.*, they have a good faith belief that the administrative record can indeed be supplemented). If they did not hold such a belief, but sought a remand knowing that the ALJ could not possibly obtain additional records, there would be some question as to whether Ponce's counsel made a knowing misrepresentation to this Court.

9

record, even with a represented claimant, remand is appropriate. Because the Court remands so that the ALJ may further develop the documentary evidence, it does not determine whether the supplemental evaluation mentioned at the hearing is necessary or appropriate at this time.

For the foregoing reasons, **IT IS ORDERED** that Judgment be entered reversing the Commissioner's decision and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion and Order.

**IT IS HEREBY ORDERED.**

DATED: July 24, 2015  _____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE